## THE CONCHO.[1]

### THE J. J. DRISCOLL.

### THE H. B. RAWSON.

### REED et al. v. THE J. J. DRISCOLL, THE H. B. RAWSON, and THE CONCHO.

#### (District Court, S. D. New York. October 30, 1893.)

COLLISION — STEAM VESSELS MEETING — TIDE — PROPER SIDE OF CHANNEL— LOOKOUT.
    A steamer rounding the Battery into the East river collided with a schooner in tow of a tug on a hawser about 150 feet long. The tow was going out with the ebb tide, and making slow progress. The tug saw the steamer and her course in season to have kept away more to the north side of the channel, which she did not attempt to do until a few minutes before the collision. The steamer did not keep a proper watch on the tow and its movements, though both were visible in season, and hence did not avoid the latter by porting, as she could easily have done. *Held*, that both were in fault.

In Admiralty. Libel for collision, brought by Peter B. Reed and others against the steamer Concho and the tugs J. J. Driscoll and H. B. Rawson. Dismissed as to the Rawson, and decree against the Concho and Driscoll.

[1] Reported by E. G. Benedict, Esq., of the New York bar.

Wing, Shoudy & Putnam, for libelants.
Robinson, Biddle & Ward and Mr. Hough, for the Driscoll.
Stewart & Macklin, for the Rawson.
Butler, Stillman & Hubbard, for the Concho.

BROWN, District Judge. About 1 p. m. of March 1, 1893, as the steamship Concho, coming in from sea, was rounding Governor's island, and proceeding up the East river in the ebb tide, she came in collision with the libelant's large four-masted schooner, William Johnson, bound down the East river, in tow of the tug Driscoll, on a hawser about 150 feet long. The stem of the steamer struck the schooner's port side, not far from amidships, at an angle of from five to six points, doing damage, for which the above libel was filed.

A few moments before collision the Rawson had come up on the port side of the schooner for the purpose of aiding in docking her in Erie basin, on her arrival there; but before she had fully made fast, the likelihood of collision was perceived, and her lines were cast off, and she dropped astern. As was conceded upon the trial, no fault is made out as respects her, and the libel against the Rawson is, therefore, dismissed.

As between the Driscoll and the Concho, the testimony is extremely conflicting, both as to the place where, and the manner in which, the collision occurred. Upon the whole evidence, I am satisfied that the collision took place after the Concho had completely rounded Governor's island, and got headed up the East river; and that it was about in mid-river, and on a line between pier 2 and Governor's island.

In behalf of the Concho it is contended, that the collision was brought about from the lack of power in the Driscoll; so that the master of the Concho was misled as to the tow's rate of motion, and did not succeed in getting astern of her, as he had shaped his course and expected to do; that the tug and tow, though heading towards the New York shore, did not draw away from before the Concho, as was expected, but drifted down upon the Concho with the ebb tide; and further, that the tug did not make seasonable efforts to keep out of the way. The time of the collision was about two hours before the end of the ebb current, which must, therefore, have been running at the rate of about two knots per hour.

From the time it took, viz., about 50 minutes, to tow the schooner from Newtown creek, about 3¾ miles, it would seem that the tug had a towing power with that schooner of less than two knots per hour through the water; so that in crossing the East river tide, her advance would be less than her drift, a condition of inefficiency no doubt calculated to mislead and endanger other vessels, unless fully appreciated and provided against.

It is doubtful whether towing a heavy tow with so slight power ought to be held reasonable and prudent navigation in the tides of the East river. It is unnecessary, however, to consider that point here. For the fact of her slow progress through the water must have been known to the tug; and in broad day it must also

have been apparent to the steamship, had any careful attention been given to the tug and the schooner. Timely observation and proper maneuvering in reference to the apparent facts, were equally incumbent upon both the tug and the steamer. I think both are to blame for not taking more timely and efficient measures to avoid each other. To the Driscoll, it was evident that the Concho was bound up the East river. Her course lay to the southward of the Driscoll. The Driscoll must have been nearly half a mile distant when the Concho was seen rounding Governor's island. The Driscoll was somewhat in the proper water of the Concho, as I find that she did not get to the north of mid-river at the time of collision. She should have hauled over to starboard more quickly and effectually than she did, so as to get into the water where she claims to have been, but where I am obliged to find she was not. She did not attempt to get more to the northward until a few minutes before collision.

The Concho, on the other hand, did not keep a proper watch on the tug and tow. No report of them was made by the lookout; and though seen from the bridge early enough, it is plain not much attention could have been given to their movements, until they were quite near. There was abundant unobstructed room for the Concho to the right; and had the tow been observed, and had the Concho ported in time, so as to pass to starboard by a reasonable margin, as she could easily have done, the collision would have been avoided; it would also have been avoided by reversing sooner, which was equally in her power.

Decree for the libelants against the Driscoll and the Concho, with costs; as to the Rawson, the libel is dismissed.